IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVARI KEYS, | ) |
| Plaintiff, | ) No. 16 C 8452 |
| v. | ) Hon. Virginia M. Kendall |
| COLLECTION PROFESSIONALS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case involves a remarkably small amount of disputed charges, specifically $390, from five years ago, which have led to this federal case and the current cross-motions for summary judgment on Plaintiff Javari Keys' complaint, which alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 452/1 *et seq*. For the reasons explained below, Keys' motion (Dkt. 27) is granted in part and denied in part, and Defendant Collection Professionals, Inc.'s cross-motion (Dkt. 34) is granted in part and denied in part.

**BACKGROUND**

The following facts are drawn primarily from the parties' Local Rule 56.1 statements (Dkt. 29), (Dkt. 33), (Dkt. 39), and are largely undisputed unless otherwise noted.

Plaintiff Javari Keys incurred charges for medical services on two accounts from Sarah Bush Lincoln Health System – Physicians First ("Physicians First"). (Dkt. 33) at ¶ 35. According to his declaration and deposition, Keys and his family visited Physicians First for personal purposes. (Dkt. 29-2) at ¶ 2; (Dkt. 33-1) (J. Keys Dep.) at 30:3–21. Keys could not pay two bills – one for $218 and one for $172 -- and so his accounts went into default. (Dkt. 29) at

1

¶ 7. While it held Keys' debts, Physicians First did not charge him interest. *Id*. at ¶ 16. In 2013, Physicians First assigned the defaulted debts to—or "placed them for collection" with— Defendant Collection Professionals, Inc. ("CPI"). *Id*. at ¶ 8. Specifically, CPI purchased one account with a balance due of $218 on September 24, 2013, and it purchased the second account with a balance due of $172 on October 16, 2013. (Dkt. 33) at ¶¶ 38, 42. CPI is a licensed debt collection agency in Illinois, and it acts as a "debt collector" as defined by the FDCPA. *Id*. at ¶¶ 2–3. There was no contract between CPI and Physicians First that allowed CPI to charge interest on Keys' accounts. *Id*. at ¶ 16.

It is CPI's practice and policy to send an initial collection letter that includes validation language under § 1692g of the FDCPA and also notifies the consumer that balances remaining after 30 days "may have interest added to them as permitted by law." (Dkt. 33) at ¶ 28. Internally, CPI refers to this as "SN10," and it is automatically generated for every new account. *Id*. at ¶ 39. Then, per its policy, CPI charges 5% interest 35 days after "placement of the account" and begins to report the account—both the principal debt and interest due—to the credit reporting agencies 60 days after "placement" if the account is not paid. *Id*. at ¶¶ 29–31. In line with these practices and policies, CPI sent Keys an SN10 on September 25, 2013 after receiving his first account, but the letter was returned to CPI and not received by Keys. *Id*. at ¶¶ 39, 41; *see* (Dkt. 29-4) (S. Edwards Dep.) at 11:16–18, 12:8–9. The return was recorded in CPI's notes for Keys' account with CPI. No SN10 was sent out regarding Keys' second account; CPI's system "suppressed" it because of the return of the previous letter. (Dkt. 33) at ¶ 43; (Dkt. 29-4) at 45:5–13. CPI's CEO, serving as its corporate representative, testified that it "could not send out letters to accounts if they're marked mail return. The letter gets suppressed. We're not sending letters to bad addresses." (Dkt. 29-4) at 45:7–9. However, over the course of the next

two years, CPI acquired different addresses for Keys and attempted to send him at least seven various other notices that referenced both accounts placed for collection. No other initial collection letters, or SN10s, were mailed. *Id*. at 11:16–14:9. Further, there is no dispute that CPI reported Keys' delinquent accounts to the credit reporting agencies, although, despite CPI's stated practice of reporting both the principal and interest due on such accounts, there is no evidence in the record that CPI reported anything other than the principal amounts due. *See* (Dkt. 33) at ¶ 44; (Dkt. 39) at ¶ 19.

CPI sent Keys a notice dated October 15, 2015, and Keys received it. *Id*. at ¶ 48. The letter provided Keys' CPI account number and itemized Keys' two accounts (or "previous debts") with Physicians First—the first with a principal balance of $218 and the second with a principal balance of $172. The letter also noted interest associated with those accounts, $12.57 and $9.92 respectively, making Keys' total "amount owed" $412.49. *See* (Dkt. 1-1) at 10 (Oct. 15, 2015 Letter); *see also* (Dkt. 29) at ¶¶ 13–15. The letter further stated: "[b]efore proceeding with our collection efforts we would like to request that you pay the entire amount due or call our office to make other arrangements." *Id*. Keys did not contact CPI or pay the amount due. (Dkt. 33) at ¶¶ 49–50. Instead, Keys sought legal representation. *Id*. at ¶ 51.

With the alleged debts still outstanding, in November 2015, a CPI collection agent recommended that litigation be initiated to collect the debt. *Id*. at ¶ 45. Because CPI has a policy not to report interest accrued on any debts considered for litigation, on November 23, 2015, CPI communicated two outstanding accounts for Keys to credit-reporting agency TransUnion without interest: (1) $218 and (2) $172, for a total of $390. (Dkt. 29) at ¶ 20; (Dkt. 33) at ¶¶ 20, 32, 46–47. In January 2016, CPI communicated the same two outstanding amounts and total debt of $390 to Experian. (Dkt. 29) at ¶ 22. Although Keys' counsel ordered his

3

TransUnion credit report, Keys testified that he ordered his Experian report, which cost $11.50. The parties, however, dispute the purpose for which Keys ordered the Experian report. CPI argues that Keys ordered the report in preparation of filing bankruptcy; Keys argues that he ordered the report to verify the alleged debt held by CPI after receiving the October 2015 collection notice.

Nevertheless, on August 30, 2016, Keys filed the instant lawsuit. *See* (Dkt. 1). In Count I of his complaint, Keys alleges that CPI violated three separate sections of the FDCPA: Keys contends that CPI added interest to his debt that was not authorized by Keys' contract with Physicians First or permitted by law in violation of 15 U.S.C. § 1692f and § 1692e(8) and then reported the debt *without* interest to TransUnion and Equifax, meaning that CPI misrepresented the amount of the debt by attempting to collect multiple amounts of the same debt in violation of 15 U.S.C. § 1692e. In Count II, Keys alleges that CPI violated the ICAA by attempting to collect interest to which it was not entitled and also by conveying varying balances due on the alleged debt to Plaintiff and the credit reporting agencies in violation of 225 ILCS 425/9(a). To date, Plaintiff has not made any payments on his alleged debt. (Dkt. 29) at ¶ 19. Plaintiff seeks $11.50 in actual damages for obtaining his credit report, statutory damages of $1,000, and reasonable attorneys' fees on his FDCPA claim, and compensatory and punitive damages on his ICAA claim.

## **LEGAL STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists if "the evidence is

4

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most reasonable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. When there are cross motions, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.,* 400 F.3d 523, 526–27 (7th Cir. 2005).

## **DISCUSSION**

### A.   The Fair Debt Collection Practices Act Claim (Count I)

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)); *see also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1720 (2017) (the FDCPA aims to deter "wayward debt collection practices" that disrupt debtors' lives). A plaintiff who prevails on an FDCPA claim is entitled to "(1) any actual damage sustained by such person as a result of [a debt collector's failure to comply with the FDCPA]," as well as statutory damages "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a).

### 1.     Article III Standing

As threshold matter, CPI argues that Keys has failed to show that he has Article III standing to bring his FDCPA claim. "The jurisdiction of the federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016). To meet "the 'irreducible constitutional minimum' of Article III standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548. For an injury to be concrete, it "must actually exist"; it must be real, not "abstract, but not necessarily tangible." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886–87 (7th Cir. 2017) (internal quotations omitted). In assessing whether an intangible harm qualifies as a concrete injury, it is "important" for a court to consider "both history and Congress' judgment . . . ." *Id*.

CPI argues that Keys has not shown that he suffered a sufficiently concrete injury to prevail on his FDCPA claim because he did not pay any portion of the alleged debt (principal, interest or otherwise) and also because his deposition testimony was equivocal as what exactly prompted him to pay $11.50 for his Experian credit report. *See* (Dkt. 34) at 8–10. Therefore, CPI argues that the FDCPA violations alleged by Keys are nothing more than bare procedural violations. In *Spokeo*, the Court stated that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that

6

person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1548. The Court in *Spokeo* also stated that "Article III standing requires a concrete injury even in the context of a statutory violation" and that the plaintiff there could not allege "a bare procedural violation, divorced from any concrete harm" and automatically satisfy Article III's concreteness requirement. *Id*. at 1547–49. *Spokeo* further stated that the *risk* of harm sometimes is enough to satisfy concreteness. *Id*. at 1549.

However, even setting aside the disputed $11.50 for the Experian report, Keys has demonstrated a concrete injury sufficient to confer Article III standing on Count I. *See e.g. Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) ("even absent actual monetary damages, it is still possible to satisfy the concrete-harm requirement"). The Seventh Circuit encountered a similar scenario in *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998), where it held that the harm allegedly suffered by the plaintiff—receiving letters containing the debt collector's illegal demand for a $12.50 collection fee—was enough to establish Article III standing. *Id*. at 593–94. Even though the plaintiff did not pay the fee, the demand tried to add an unauthorized amount to the debt owed and that was enough for standing. *Id*. at 593. This same theory advanced by Keys in his § 1692f(1) claim, and *Spokeo* does not alter *Keele*. *See Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) ("*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating legal rights, the invasion of which confers standing even though no injury would exist without the statute.") (internal quotation marks omitted); *Aguirre v. Absolute Resolutions Corp.*, 2017 WL 4280957, at *4 (N.D. Ill. Sept. 27, 2017) ("*Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist."); *accord Quinn v. Specialized Loan*

*Servicing, LLC*, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016); *Lane*, 2016 WL 3671467, at *5. Thus, the Keys' injury, receiving a debt collection letter that wrongly assessed and attempted to collect interest, is concrete, and he has standing to pursue this claim. *Keele*, 149 F.3d at 594.

CPI cites to *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945 (S.D. Iowa 2016), but that case is distinguishable (in addition to being out of circuit and non-precedential). *See* (Dkt. 34) at 10. There, the plaintiff alleged that a debt collection letter he received violated 15 U.S.C. § 1692g by demanding payment before the statute allows, thereby frustrating his ability to dispute his debt. *Jackson*, 207 F. Supp. 3d at 949. The court concluded that the plaintiff had not alleged a concrete violation of § 1692g because his allegations did not show any harm that § 1692g was intended to prevent—that is, misstatements in the amount of the debt, the identity of the original creditor, or the validity of the debt, among other things. *Id*. at 954. Further, there was no "risk" of harm, because even though the plaintiff alleged that the letter frustrated his ability to dispute the debt, the plaintiff did not indicate that he ever actually intended to dispute the debt, and in fact he had no grounds to challenge the validity of his debt. *Id*. In reaching its conclusion, the court noted various other cases in which procedural violations of the FDCPA were found to be sufficient to constitute an Article III injury in fact and therefore the court "confined [its holding] to the context of this case and the disclosure requirements in section 1692g of the FDCPA." *Id*. at 961. Section 1692g is not implicated here, and even if the holding in *Jackson* did extend to other sections of the FDCPA, Keys has provided enough evidence to create a dispute as to whether he incurred $11.50 in actual damages and the harm alleged in connection with Keys' request for statutory damages on account of CPI's addition of interest to his account is that which § 1692f was specifically intended to protect. Therefore, the

8

piece of *Jackson* that CPI wishes to highlight, that the plaintiff there did not allege a risk of harm because he did not act on the alleged violation, does not work here to deprive Keys of standing.

As for Keys' theory on his claim for a violation of § 1692e(2)(A), that too is sufficient to show a concrete injury because it alleges that the amount of his debt has been misstated. *See Pierre*, 2017 WL 1427070, at *4; *see also, e.g.*, *Aguirre*, 2017 WL 4280957, at *4 ("the courts have concluded that plaintiffs claiming intangible injuries from allegedly predatory debt collection practices do in fact have Article III standing to sue for statutory damages under the FDCPA") (citing cases); *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739–40 (N.D. Ill. 2017) ("The value of receiving truthful information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, as here, the plaintiff did not act upon the misinformation. But being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless."). However, despite the conclusion that Keys has provided enough evidence to show that he has standing to pursue his § 1692e(2)(A) claim, as explained below, he has failed to present sufficient evidence to support his motion for summary judgment or to defeat CPI's motion for summary judgment on this particular claim.

### 2. 15 U.S.C. § 1692f

Turning to the merits, Keys alleges that CPI violated § 1692f of the FDCPA by adding interest to his debt. Section 1692f(1) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt," in particular by collecting or attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Here, the parties do not dispute that Physicians First never

9

*charged* Keys interest on his debt, and although neither party has supplied any contract between Keys and Physicians First for the record, CPI does not argue that any original agreement permitted Physicians First to charge Keys interest. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *see also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events"). The parties also do not appear to dispute that CPI was *not* permitted by law to charge Keys interest, because CPI failed to comply with the only law cited by the parties that would have permitted it to charge interest—the Illinois Interest Act ("IAA"). As relevant, the IIA provides that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum on all monies after they become due . . . . In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor." 815 ILCS 205/2. Through its briefing, CPI has acknowledged that Keys did not receive written notice that CPI would charge and collect interest—that is, an SN10.[1] However,

---

[1] The Court notes that the "FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015); *see also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 778 (7th Cir. 2007) ("[A] violation of state law is not in itself a violation of the federal [FDCPA] Act[.]"); *Butler v. J.R.S-I, Inc.*, 2016 WL 1298780, at *6 (N.D. Ill. Apr. 4, 2016) ("[T]he Seventh Circuit has repeatedly held that the FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law.") (citation and internal quotation marks omitted); *Washington v. N. Star Capital Acquisition, LLC*, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 15, 2008) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."). However, CPI has not presented any argument at this time or any other time that Keys' claim for a violation of § 1692f is merely an attempt to redress a violation of state law. Accordingly, Keys' § 1692f claim will not be dismissed on this ground. But the Court will not consider Keys' argument that the actual language contained in CPI's SN10 does not comply with the IIA both for this reason and also because it is irrelevant—there's no dispute that Keys never received an SN10 for either the $218 account or the $172 account. *See* (Dkt. 38) at 3–4.

CPI argues that it is entitled to summary judgment on Keys' § 1692f claim because its failure to send notice was a bona fide error. *See* (Dkt. 34) at 9–11. In response, Keys argues that he is entitled to summary judgment on CPI's bona fide error defense. *See* (Dkt. 28) at 16–17.

The FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also Jerman*, 559 U.S. at 578. CPI argues that it has a policy and practice to send sufficient notice to allow it to charge interest under the IIA upon the placement of new accounts, but that in this case it mistakenly proceeded to charge interest even after the SN10 on Keys' first account was returned (and acknowledged returned) and the SN10 on his second account was suppressed and never sent. (Dkt. 34) at 9–10. First, CPI may not have intentionally violated the FDCPA, but the undisputed facts show that CPI intentionally charged interest on Keys' accounts. Second, although sending a collection letter to an incorrect address qualifies as a "clerical or factual error" like that discussed in *Jerman*, the error established here was CPI's action of charging interest on Keys' accounts despite its awareness that the SN10s either were returned or never sent to Keys, that is, without providing Keys the notice required by the IIA. This is not a good faith error.

The testimony of CPI's corporate representative demonstrates that after the SN10 was returned, it was processed correctly in CPI's system; it was not lost or otherwise unrecorded and it had the effect of suppressing an SN10 on the second account because "[w]e're not sending letters to bad addresses." (Dkt. 29-4) at 45:7–9. What's more, CPI somehow obtained additional addresses for Keys and sent other, non-SN10 written communications to those addresses.

Instead of a simple clerical error, this indicates that CPI made a *legal* mistake in thinking that it could still charge interest even though its SN10 was returned. On this record, no reasonable jury could find that CPI has shown, by a preponderance of evidence, that its mistake was an unintentional factual error, and it thus cannot be excused by § 1692k(c). *See Jerman*, 559 U.S. at 604–05 ("[T]he bona fide error defense . . . does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute.").

Even if CPI had evidence that its charging of interest on Keys' account was due to careless error rather than mistaken legal interpretation, it would still not succeed on the bona fide error defense. In particular, CPI has failed to offer evidence that it had procedures in place to prevent the factual error that it says took place in this case—mailing the SN10 to the wrong address. Its procedures are simply to automatically send the SN10s upon placement of accounts. There is no evidence that CPI has measures in place to verify or confirm addresses before sending SN10s or that it has any measures to deal with SN10s that have been returned or never sent, short of suppressing further letters to the "bad addresses" and removing the bad addresses from CPI's system. (Dkt. 29-4) at 45:7–9. Further, although CPI argues that its procedure is "not to add interest on accounts where the letter has not been sent" ((Dkt. 43) at 2), this procedure fails to contemplate receipt by—and therefore, notice to—the debtor, and regardless, it does not appear to have been followed in this case where interest was charged on Keys' second account even though no SN10 was sent. Such procedures, therefore, are not reasonably adapted to avoid the error established here. In addition, CPI argues that it maintained adequate policies because its employees were trained on the FDCPA. *See* (Dkt. 34) at 5. But "mistakes of law are not excused" and therefore, a debt collector's legal training is not an adequate "procedure." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015) (internal quotation marks

omitted). Therefore, CPI has not provided enough factual material for a reasonable jury to find for CPI on the bona fide error defense and Keys is entitled to summary judgment on his claim for a violation of § 1692f(1).[2]

### 3. 15 U.S.C. § 1692e

Count I of the complaint also asserts a violation of § 1692e of the FDCPA, which prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Keys claims that CPI violated subsection 2(A) of the statute, which prohibits "[t]he false representation of" "the character, amount, or legal status of any debt" by reporting a total debt of $390 to TransUnion and Experian immediately after directly communicating to him that the total amount owed was $412.49 and in the absence of any payments. *Id.* § 1692e(2)(A); (Dkt. 28) at 14–16. In other words, either the amounts reported to TransUnion and Equifax did not accurately reflect the amount of the debt as of the date that CPI provided that information to the credit reporting agencies (November 2015 and January 2016) or the amount reported on the October 15, 2015 collection letter did not accurately reflect the amount of the debt as of that date. In response, CPI

---

[2] Keys also contends that CPI's attempt to collect interest violated 15 U.S.C. § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." *See* (Dkt. 28) at 8, 9, 10. But Keys failed to develop any argument on this particular subsection or cite to any caselaw to support this claim. Likewise, CPI has not addressed any alleged violation of this subsection in its cross motion or reply. Still, § 1692e(8) addresses the risk of substantial financial harm caused by an inaccurate credit rating. Keys has not demonstrated with evidence in the record that the interest added by CPI (and *not* reported to TransUnion or Experian) somehow caused harm to his credit rating let alone presented any evidence that CPI knew or should have known that the information in the collection letter was *false*, Keys' claim for a violation of § 1692e(8) based on the October 15, 2015 letter cannot proceed. Not only can a claim for this violation not proceed because it lacks merit, it cannot proceed because it is based on the exact same facts as Keys' § 1692f claim, and he cannot gain a double recovery for seeking relief for the same harm under two sections. *See Rhone v. Med. Bus. Bureau, LLC*, 2017 WL 4875297, at *3 (N.D. Ill. Oct. 25, 2017). And to the extent that § 1692e(8) should be applied to CPI's provision of the account balance amounts to TransUnion and Experian, Keys has not developed any argument or evidence to establish that the information reported was false.

13

contends that both communicated amounts were accurate and not confusing. *See* (Dkt. 34) at 11–13.

Typically, determining whether a communication is misleading is a question of fact. *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). To determine whether a statement is misleading or deceptive under § 1692e, the Court applies an unsophisticated consumer standard. *See Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense."). The unsophisticated consumer has "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl*, 556 F.3d at 645 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). Although an "unsophisticated consumer 'may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion.'" *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) (quoting *Pettit*, 211 F.3d at 1060) (finding an unsophisticated consumer would interpret a request for verification of debt by a defendant to be the same as disputing debt). This is an objective standard. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012).

Where a communication is not clearly misleading or confusing on its face, "summary judgment should be granted in favor of the defendant, unless the plaintiff has presented 'objective evidence of confusion' [by the unsophisticated consumer]." *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (citing *Taylor*, 365 F.3d at 575); *see also Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322-23 (7th Cir. 2016) (describing the various evidentiary requirements for the three categories of false, deceptive, or misleading statements and practices claims). Here, Keys has presented subjective evidence that he was confused,

particularly in light of his personal understanding of what he believed he owed to Physicians First. He has not offered evidence that the amount reported to TransUnion and Experian was inaccurate, and CPI has explained, citing evidence in support, that the amount changed because it removed any interest in anticipation of litigation and therefore CPI only reported the principal balance due. In addition, the October 2015 letter delineated the interest and principal, thereby allowing even an unsophisticated consumer the ability to understand the later credit reporting. Keys has not provided any evidence, aside from his own confusion, to support his argument for summary judgment on this claim or to rebut CPI's cross motion for summary judgment.

This case is similar to *Barnhart v. Med Shield, Inc.*, 2016 WL 4720920 (S.D. Ind. Sept. 9, 2016). There, the plaintiff was sent a collection letter in January 2014 listing an outstanding current balance of $1,279.43, which was comprised of a principal balance of $1,177.49 and $101.94 in interest. *Id*. at *1. Then, in February 2014, the debt collector provided information to TransUnion that the plaintiff's debt was only $1,177. The court granted summary judgment for the debt collector, finding that the information in the various documents regarding the amount due was not misleading or false; the principal balance was reported accurately and consistently across the documents. *Id*. at *4. Even though interest was included in the communication to the plaintiff and was excluded in the information provided to TransUnion, there was no triable issue of fact with respect to the debt collector's communications about the plaintiff's debt. *Id*. The same reasoning applies here: with no evidence to rebut the truth of CPI's explanation or to otherwise raise a question as to the accuracy of the reported amounts, Keys' claim relies on nothing more than speculation, which is not sufficient to create an issue for trial on the alleged § 1692e(2)(A) violation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (speculation may not be used to manufacture a genuine issue of fact) (citing *Amadio v. Ford*

*Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). Accordingly, to the extent that Count I includes a claim alleging a misrepresentation of the amount of Keys' debts, CPI is entitled to summary judgment.

    **4.    Damages**

To redress the violation of § 1692f, Keys requests $11.50 in actual damages plus statutory damages. But the parties' current briefing is insufficient to resolve the issue of damages at this time. For one thing, the parties dispute whether Keys ordered his Experian credit report in response to the October 15, 2015 collection letter or for the unrelated purpose of filing for bankruptcy. *See* (Dkt. 34) at 9–10; (Dkt. 38) at 12.. Keys' deposition is not clear on this point. "[O]nly losses flowing from an FDCPA violation are recoverable as actual damages." *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007). Even if there were no disputed facts, the need to exercise discretion in determining the amount of statutory damages to award makes the issue inappropriate for disposition on summary judgment. In determining the amount of statutory damages to award, "the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Section 1692k "is multifaceted and open-ended, granting the factfinder considerable discretion to set statutory damages." *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1033–34 (N.D. Ill. 2015). Because § 1692k(a)(2) provides for trial by jury in determining statutory additional damages," *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998), the Court denies both parties' motions for summary judgment on the issue of actual and statutory damages. This is particularly appropriate here, where CPI's legal mistake

16

may serve to permit the factfinder to adjust the statutory damages, even though CPI is not entitled to the categorical protection of the bona fide error defense.  *See Jerman*, 559 U.S. at 594.

**B.     The Illinois Collection Agency Act Claim (Count II)**

In Count II, Keys alleges that CPI violated § 9(a) of the ICAA through the same behavior discussed above—trying to collect unauthorized interest and misrepresenting the amount of the debt owed.  Section 9(a) provides, in relevant part, that the Illinois Department of Financial and Professional Regulation ("DFPR") may take various forms of disciplinary action against collection agencies that "attempt[] or threaten[] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist," "misrepresent[] the amount of the debt alleged to be owed," or "collect[] or attempt[] to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is expressly authorized by the agreement creating the debt unless expressly authorized by law . . . ."  225 ILCS 425/9(a)(24), (30), (33).  The parties agree that Keys must show actual damages to succeed on his ICAA claim. *See* (Dkt. 34) at 13; (Dkt. 38) at 12.  Again, the parties disagree that Keys has cleared this hurdle because of the discrepancy as to whether the $11.50 was a result of CPI's actions.  However, the Court will not address this dispute because the Court declines to find that § 9 creates a private right of action.  *See* (Dkt. 14) at ¶ 35 (denying that a private right of action exists for violation of the ICAA); *see also, e.g.*, *Garcia v. Miramed Revenue Grp., LLC*, 2018 WL 701283, at *2 (N.D. Ill. Jan. 30, 2018) (declining to recognize a private cause of action under the ICAA); *Skinner v. LVNV Funding, LLC*, 2018 WL 319320, at *6 (N.D. Ill. Jan. 8, 2018) (concluding that "the Illinois Supreme Court would not find an implied right of action under § 9 of the ICAA"); *Eul v. Transworld Sys.*, 2017 WL 1178537, at *17 (N.D. Ill. Mar. 30, 2017) ("[N]o Illinois appellate decision before or since [*Sherman v. Field Clinic*, 392 N.E.2d 154 (Ill. App. Ct. 1979)] has

found, applied, or even mentioned an implied private right of action under § 9—or, so far as this Court's research reveals, any other provision of the ICAA."). Indeed, in *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51 (Ill. 1991), the Illinois Supreme Court itself suggested in dicta that no implied private right of action exists to enforce violations of the ICAA. Accordingly, Keys may not proceed on this theory. CPI's motion for summary judgment on the ICAA claim is granted and Keys' motion for summary judgment on the ICAA claim is denied.

## CONCLUSION

For the reasons discussed above, Keys' motion for summary judgment (Dkt. 27) is granted in part and denied in part and CPI's cross motion for summary judgment (Dkt. 34) is granted in part and denied in part. Specifically, Keys is entitled to summary judgment on Count I for the alleged violation of § 1692f(1). CPI is entitled to summary judgment on Count I for the alleged violation of § 1692e(2)(A) and on Count II, Keys' ICAA claim. Both parties' motions are denied as to damages. Judgment is entered on the counts, and the parties are directed to discuss damages and attempt to resolve them without court involvement now that they have the benefit of this opinion. If damages and attorney fees are not resolved amicably between the parties on or before April 15, 2018, the parties shall submit their position papers as to both and the Court will rule by mail. The Court directs the parties to make every effort to resolve the damages and fees issues without Court involvement due to the small amount of damages alleged and the Court's overloaded docket.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: March 25, 2018